**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENNETH MALIK MILLER,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO. 1:10-0946** |
| **v.** | : | |
| | : | **(CONNER, D.J.)** |
| **R.M. LAWLER, Superintendent,** | : | **(MANNION, M.J.)** |
| ***et al.,*** | | |
| | : | |
| **Defendants.** | : | |

## <u>REPORT AND RECOMMENDATION</u>[1]

Pending before the court is a motion to dismiss on behalf of defendant Riscigno, (Doc. No. 42), and a motion for summary judgment on behalf of defendants Henry, Corbin, Dick, Everly, Gil, Lawler, Mitchell, Showalter and Walter ("Corrections Defendants"), (Doc. No. 47). For the reasons set forth below, the court recommends that the motions be **GRANTED.**

## I.   FACTS AND PROCEDURAL BACKGROUND

The plaintiff was previously confined at the State Correctional Institution at Huntingdon in Huntingdon, Pennsylvania ("SCI-Huntingdon), and during

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

plaintiff's confinement at SCI-Huntingdon, he allegedly acted as a "jailhouse litigator." (Doc. No. 26 at ¶¶16, 19). Consequently, defendant Corrections Officer Dick allegedly approached the plaintiff in January and February 2010, in order to request legal advice, because she was being sexually harassed and discriminated against by her male training sergeants. *Id.* at ¶¶21-22. More specifically, defendant Dick allegedly told the plaintiff that her training sergeants and other administrators were investigating her for hanging out in front of inmate's cells, and believed that she and defendant Everly were "penis watchers, too inmate friendly, and [we]re taking letters from inmates." *Id.* at ¶¶26-27. The plaintiff initially gave defendant Officer Dick legal advice verbally, but then upon her request, he gave her written legal advice as well. *Id.* at ¶32.

On February 23, 2010, the plaintiff was issued misconduct #B168014. (Doc. No. 69-1 at 38). The misconduct report indicates that the plaintiff had called defendant Dick over to his cell and then exposed himself to her, and that defendant Everly had witnessed that incident. *Id.* The misconduct report also indicates that the plaintiff had engaged in the same conduct ten days earlier and that he had been ordered not to expose himself again. *Id.* Consequently, the plaintiff was charged with sexual harassment, indecent exposure, refusing to obey an order, and violating the Pennsylvania criminal

code. *Id.*

The plaintiff alleges that the misconduct report was fabricated. For example, he alleges that it falsely stated that (1) defendant Everly was a witness, (2) that plaintiff previously exposed himself to defendant Everly, and (3) that defendant Dick had previously warned the plaintiff to not engage in that type of conduct. (Doc. No. 26 at ¶50). In addition, the plaintiff contends that defendants Gil, Henry, Dick and Everly conspired to issue him a false misconduct, as retaliation against him, because he (1) had assisted other inmates with their lawsuits, (2) gave legal advice to defendant Dick, and (3) associated with an inmate that defendant Henry disliked as that inmate had allegedly exposed defendant Henry's "perverted history at Huntingdon." *Id.* at ¶¶49, 53 & 54.

As a result of the misconduct report, the plaintiff was placed in the Restricted Housing Unit ("RHU"). While plaintiff was housed in the RHU, defendant Henry allegedly spread rumors throughout the prison that the plaintiff was a pervert. *Id.* at ¶51.

On February 26, 2010, the plaintiff had a misconduct hearing and was found guilty on all charges. (Doc. No. 69-1 at 42). Specifically, the Hearing Examiner found that "the staff report and video are believed over the denial of

3

inmate Miller [and] that Miller did more likely than not call the COT [Corrections Officer Trainee] to his cell and exposed himself to her . . . []." *Id.* As such, the plaintiff was removed from his prison job and was ordered to spend sixty (60) days in disciplinary custody. *Id.*

The plaintiff takes issue with his misconduct hearing. Specifically, the plaintiff alleges that, at the hearing, defendant hearing examiner Mitchell denied him the opportunity to present evidence from a credible witness, or other credible and exculpatory evidence. (Doc. No. 26 at ¶¶76-77). In addition, plaintiff alleges that (1) defendant Mitchell retaliated against him because he is the jailhouse litigator in another civil action against Mitchell, Corbin and Lawler; and (2) defendant Mitchell was not capable of being fair and impartial because he was kidnaped and abused in a prison riot in 1989. *Id.* at ¶¶78-79.

The plaintiff then filed a misconduct appeal on the basis that the procedures employed were contrary to law, Department Directives or regulations; the punishment was disproportionate to the offense; and the findings of fact were insufficient to support the decision. (Doc. No. 69-1 at 45). On March 15, 2010, after reviewing the record, the Program Review Committee, including Defendant Corbin, upheld the decision of the Hearing Examiner. *Id.* The plaintiff then appealed to the Superintendent, raising the

same arguments he did to the Program Review Committee. *Id.* at 47. On March 26, 2010, Superintendent Lawler rejected plaintiff's appeal as lacking merit, and sustained the decision of the hearing examiner. *Id.* The plaintiff then appealed to final review, and on, April 12, 2010, the Chief Hearing Examiner ruled that the responses provided by the Program Review Committee and the Superintendent should be upheld in full, and that his appeal must be denied. *Id*. at 49.

Plaintiff appears to take issue with defendant Superintendent Lawler and defendant Corbin because they rejected his misconduct appeals. (Doc. No. 26 at ¶¶81, 87). Specifically, the plaintiff alleges that defendant Lawler failed to sufficiently investigate, and as a result this amounted to deliberate indifference to plaintiff's constitutionally protected rights. *Id.* In addition, plaintiff contends that defendants Corbin and Lawler retaliated against him because of his jailhouse litigation activities. *Id.* at ¶¶81, 86.

Finally, while confined in the RHU, the plaintiff alleges that he was denied heat, hot water, and medical assistance which allegedly resulted in him having colds and joint aches. *Id.* at ¶61. Specifically, the plaintiff alleges that defendant Nurse Riscigno refused to check on him while he was in the RHU, thereby forcing plaintiff to pay the ten dollar co-pay for treatment that he

needed due to the low temperatures in his cell. *Id.* at ¶63. As such, the plaintiff filed a grievance, and when he returned to the general population, defendant Lawler replied that plaintiff should request free medical treatment. *Id.* at ¶¶64-65. However, defendant Riscigno allegedly went along with her supervisor, defendant Showalter, and continued to require the plaintiff to pay a co-pay, regardless of the alleged breakdown of the heat and hot water while the weather was very cold. *Id.* at ¶68.

Furthermore, the plaintiff takes issue with defendant Lawler because he failed to order defendants Riscigno and Showalter to treat him for free when defendant Lawler knew that the prison lacked heat and that plaintiff had no hot water while in the RHU. *Id.* at ¶71. As such, plaintiff claims that defendant Lawler allowed the medical department to abuse the co-pay policy. *Id.* at ¶72.

On May 4, 2010, the plaintiff commenced this action by filing a complaint, (Doc. No. 1), and, on November 22, 2010, the plaintiff filed an amended complaint, (Doc. No. 26), bringing First, Eighth and Fourteenth Amendment claims against the defendants, as well as various claims under Pennsylvania state law. On March 10, 2011, defendant Riscigno filed a motion to dismiss the plaintiff's amended complaint, (Doc. No. 42), and this motion is fully briefed (Doc. No. 43.); (Doc. No. 52). On March 15, 2011, the Corrections

defendants filed a motion for summary judgment, (Doc. No. 47), that was accompanied by a brief in support, (Doc. No. 69), and a statement of undisputed material facts, (Doc. No. 70). On July 8, 2011, the plaintiff filed a brief in opposition, (Doc. No. 78), and a statement of undisputed material facts, (Doc. No. 79). Thus, these motions are ripe for our consideration.

## II.   DEFENDANT RISCIGNO'S MOTION TO DISMISS

### A.   Standard of Review

The defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550

U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court

may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B. Eighth Amendment Medical Care Claim

To state a claim under the Eighth Amendment for denial of medical care, a prisoner-plaintiff must show that the defendants were deliberately indifferent to his serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A "serious" medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). Deliberate indifference occurs when an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, to successfully state a claim, a plaintiff must allege that the defendant acted with a sufficiently culpable state of mind, *Wilson v. Seiter*, 501 U.S. 294, 298,(1991), and must in some way "connect[] his factual allegations to the alleged mental states" of the defendants, *Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir. 2004).

Mere    negligence,    unsuccessful    medical    treatment,    or    medical

malpractice do not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Estelle*, 429 U.S. at 106; *Spruill*, 372 F.3d at 237; *Lanzaro, 834 F.2d at 346*. "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993), and courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment" *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa.1996) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

"'Deliberate indifference,' therefore, requires 'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) and citing *Farmer*, 511 U.S. at 842). The deliberate indifference standard is, of course, clearly

met when a doctor is intentionally inflicting pain on a prisoner. *Spruill*, 372 F.3d at 235. Deliberate indifference has also been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citing *Durmer*, 991 F.2d at 68). Deliberate indifference has also been found "when the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).

In the amended complaint, the plaintiff alleges that defendant Riscigno denied him free medical treatment while he was suffering from "colds, viral respiratory infections, [and] joint aches" due to the cold temperatures in the RHU. (Doc. No. 26 at ¶61). Although the plaintiff was allegedly suffering from colds, respiratory infections and joint aches, the court is not persuaded that such ailments rise to the level of serious medical needs. *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (a "serious" medical condition sufficient to support an Eighth Amendment claim is one "such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury,

or death."); *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) ("where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious") (citations omitted); *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) ("A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue--the sorts of ailments for which many people who are not in prison do not seek medical attention--does not by its refusal violate the Constitution."); *Simpson v. Prison Health Servs., Inc.*, No. 09-1167, 2010 U.S. Dist. LEXIS 6400, at *6 (W.D. Mich. Jan. 27, 2010) (nasal dryness, sinusitis, and chronic sore throat are not "conditions that threaten serious harm or death"). Because the plaintiff has not established that he had a sufficiently serious medical need, any such claim that plaintiff was denied medical care, or any disagreement over whether he should have been required to pay for his medical care, should be dismissed.[2] *See Reynolds v. Wagner*, 128 F.3d 166, 173-82 (3d Cir. 1997)

---

[2] Additionally, the court notes that the plaintiff has alleged that after this action was filed, he was treated by the medical department and learned that he was suffering from extreme hypertension, very high cholesterol and high pressure in his eye, all chronic conditions, which entitle him to free medical care. However, there is simply no indication that plaintiff or defendant Riscigno were aware that plaintiff suffered from these conditions when he was allegedly denied free medical care. Moreover, once plaintiff and the medical

(co-pay policies requiring inmates to pay for medical services do not violate the Eighth Amendment as long as they do not interfere or impede with the timely and effective treatment of serious medical needs).

## C.   First Amendment Retaliation Claim

Next, the plaintiff brings a First Amendment retaliation claim against defendant Riscigno. Specifically, the plaintiff contends that defendant Riscigno denied him free medical care because he was assisting another inmate with his civil action against defendant Showalter.

To state a claim for retaliation, a plaintiff-prisoner must show that: (I) he or she engaged in constitutionally protected conduct; (ii) an adverse action was taken by prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (iii) there was a causal relationship between the foregoing two (2) elements. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). Even if a plaintiff-prisoner demonstrates that his or her exercise of a

---

department learned that he had those conditions, he allegedly received free medical care in accordance with the Department of Corrections' policy. As such, there is simply no indication that defendant Riscigno acted with deliberate indifference. To the contrary, the plaintiff's conditions could have been discovered earlier, but it was the plaintiff who refused to pay the co-pay and insisted on free treatment.

constitutional right was a substantial or motivating factor in the challenged decision, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.

Defendant Riscigno argues that the plaintiff's First Amendment retaliation claim should be dismissed. The court agrees. Assuming that the plaintiff had engaged in constitutionally protected conduct, the court cannot find that an adverse action was taken against him by defendant Riscigno because of his alleged protected conduct.

Under the Department of Corrections' policy DC-ADM 820, Section 1[A] "[a]n inmate shall pay a $5.00 co-pay fee for . . . any non-emergency medical service provided at the inmate's request . . . [and i]ntitial medical prescription . . . []. (Doc. No. 42-2 at 38). However, plaintiff contends that he was entitled to free medical care because under DC-ADM 820, Section 1[B], inmates shall not be charged for medical services when:

> 7.    medical treatment [is] for a chronic medical disease/illness requiring regular return and/or continuous visits, as specified by the medical provider;
>
>  . . .
>
> 12.   medical service [is] provided to an inmate during a medical emergency, unless the medical emergency resulted from a

14

self-inflicted injury or illness as determined by the health care professional providing the medical service;

. . .

15.    medical service [is] provided as a result of an injury or illness arising from an inmate's facility work assignment;

. . .

19.    Medication prescribed for public health reasons.

(Doc. No. 42-2 at 38-39). Although the plaintiff cites to these provisions, the court cannot find that plaintiff's circumstances entitled him to free medical care. Specifically, according to plaintiff's own allegations, there is no indication that the medical department was aware that he had any chronic medical disease or illness until after this action was filed. In addition, the plaintiff has not alleged that he needed medical treatment during a medical emergency or due to an injury from his work assignment. Lastly, there are no allegations that plaintiff needed medication for any public health related reason.

Consequently, the court cannot find that plaintiff was entitled to free medical care. Because the plaintiff was not entitled to free medical care, and he should have been charged under the DOC's policy, the court cannot find that any adverse action was taken against him by defendant Riscigno due to his alleged constitutionally protected activity. As such, the court recommends

15

that plaintiff's First Amendment retaliation claim be dismissed. *See Rauser, 241 F.3d at 334* ("the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest").

### D.    Fourteenth Amendment Claims

In plaintiff's amended complaint, he claims that by denying him free medical care and retaliating against him, defendant Riscigno also denied him "due process, equal protection, [and] a meaningful post-deprivation remedy." (Doc. No. 26 at ¶¶68, 69). Upon construing these allegations in the plaintiff's amended complaint liberally, the court finds that the plaintiff may have intended to bring an equal protection claim as well as due process claims against defendant Riscigno.

Defendant Riscigno argues that any Fourteenth Amendment due process claim against her should be dismissed. The court agrees. The Third Circuit has explained that where a plaintiff's "allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, . . . the more-specific-provision rule forecloses [a] substantive due process claim[]." *Betts v. New Castle Youth Development Center, 621 F.3d 249, 261 (3d Cir. 2010).* Similarly, as "the First Amendment . . . provides an explicit textual

source of constitutional protection to [a] Plaintiff . . . any reliance on the substantive component of the Due Process Clause is misplaced." *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)* (quotation marks omitted). As explained above, to the extent the plaintiff took issue with being charged a co-pay in order to receive medical care, and any alleged retaliation, those claims were properly brought under the First and Eighth Amendments. Consequently, the court recommends that plaintiff's substantive due process claim be dismissed under the "more-specific-provision rule." *See Betts,* 621 F.3d at 261.

In addition, it appears that plaintiff may have intended to bring a procedural due process claim. Assuming that he has intended to do so, the court will recommend that any such claim be dismissed because, as explained above, the gravamen of the plaintiff's claims against defendants Riscigno are clearly premised on alleged First and Eighth Amendment violations. *See, e.g., Wilson v. City of Cherry Hill*, No. 10-3866, 2011 U.S. Dist. LEXIS 92305, at *26 n. 12, (D.N.J. Aug. 18, 2011) (applying the more-specific-provision rule in the substantive due process context and then dismissing the procedural due process claim because courts generally dismiss both substantive and procedural due process claims when the gravamen of the plaintiff's lawsuit is

clearly premised on a violation of a different constitutional Amendment, i.e. the Fourth Amendment).

Defendant Riscigno also argues that any equal protection claim brought against her should be dismissed. The court agrees. The Equal Protection Clause of the Fourteenth Amendment requires that all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). As such, in order for a plaintiff to state an equal protection violation, he must show that he was similarly situated to, and treated differently from, other inmates, and that this discrimination was purposeful or intentional rather than incidental. *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 424 (3d Cir. 2000).

Here, the plaintiff has failed to allege that he was subjected to any purposeful or intentional discrimination by defendant Riscigno. Moreover, there are simply no allegations that defendant Riscigno discriminated against him. As such, to the extent plaintiff intended to bring an equal protection claim against defendant Riscigno, any such claim should be dismissed. *See*, *e.g.*, *Brown v. Beard*, No. 07-0637, 2011 U.S. Dist. LEXIS 29041, at *60-62 (W.D. Pa. Mar. 21, 2011).

### E.      Supervisory Liability Claim

Finally, although somewhat unclear, it appears that the plaintiff may have intended to bring a supervisory liability claim against defendant Riscigno. However, as explained above, the plaintiff has failed to establish that his First, Eighth or Fourteenth Amendment rights have been violated. Because plaintiff has failed to establish any constitutional violation, the court recommends that any supervisory liability claim against defendant Riscigno be dismissed. *See Schlichter v. Limerick Twp.*, No. 04-4229, 2006 U.S. Dist. LEXIS 57399, at *35 (E.D. Pa. Aug. 16, 2006) ("Because it has been determined that Plaintiff's claims of First Amendment retaliation against Defendants Weaver and Moore have failed to establish a constitutional violation, there can be no supervisory or municipal liability assessed against Defendants Zaremba and Limerick Township").

## III.    CORRECTIONS   DEFENDANTS'   MOTION   FOR   SUMMARY JUDGMENT

### A.      Standard of Review

Summary judgment is appropriate if the "pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine

19

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its

20

case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).[3]

---

[3] If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court-- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

21

## B.    Official Capacity claims

The Corrections Defendants argue that plaintiff's claims against them in their official capacities are barred by Eleventh Amendment immunity. By way of response, in plaintiff's brief in opposition, he indicates that he did not intend to bring official capacity claims against the Correction Defendants, and that any such claims should be dismissed.

Nonetheless, by bringing a lawsuit against the Corrections Defendants in their official capacities, the plaintiff would really be bringing a suit against the Commonwealth of Pennsylvania. However, federal courts cannot consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985); *Edelman v. Jordan*, 415 U.S. 651, 662 (1974). "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." *Chittister v. Dep't of Cmty. & Econ. Dev.*, 226 F.3d 223, 226 (3d Cir. 2000). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. "By statute Pennsylvania has specifically withheld consent [to be

sued].” *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir.1981) (citing 42 PA. CONS. STAT. §8521(b)). Moreover, section 1983 does not “abrogate the Eleventh Amendment immunity of the States.” *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Laskaris*, 661 F.2d at 26 (This immunity extends to suits asserting civil rights violations where the state is named as a defendant.).

Consequently, the court recommends that summary judgment be granted in favor of the Corrections Defendants on any claims brought against them in their official capacities for money damages. As such, the court will now turn to plaintiff's individual capacity claims against the Corrections Defendants.

### C.    Claims against Defendant Showalter

The plaintiff brings the same claims that he brought against defendant Riscigno against defendant Showalter. Consequently, the court recommends that the plaintiff's claims against defendant Showalter be dismissed for the same reasons that the court recommended the plaintiff's claims against defendant Riscigno be dismissed. *See* Part II, *supra*.

### D.    Failure to Exhaust

The defendants argue that the plaintiff has failed to properly exhaust his administrative remedies with respect to his claims regarding lack of heat or hot water in his cell in the RHU. For the reasons that follow, the court agrees.

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996) requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The Act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). Pursuant to DC-ADM 804, the policy statement which sets forth the various steps to be taken by a state prisoner in exhausting his administrative remedies, the plaintiff would first be required to attempt to resolve his complaint informally. (Doc. No. 69-2 at 9). If his complaint could not be resolved informally, he would then need to file for initial review with the Facility Grievance Coordinator, and the grievance must clearly state any claims he is brining as well as the relief he is seeking. *Id.* at 10-12. Any adverse decision from the Facility Grievance Coordinator would have to then be appealed to the Facility Manager. *Id.* at 12-14. Finally, any appeal from the decision of the Facility Manager would have to be filed with the Secretary's Office of Inmate Grievances and Appeals. *Id.* at 14-17. No appeal can be made to the Secretary's Office of Inmate Grievances and Appeals until the

prisoner has complied with all procedures established for initial review and appeal to the Superintendent, and no appeal is final until considered by the Secretary's Office of Inmate Grievances and Appeals. *Id.*

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense to be pleaded and proven by the defendants. *Id.* at 295 n.9.

A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001). "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71.

The PLRA also mandates that an inmate "properly" exhaust

25

administrative remedies before filing suit in federal court. *Woodford v. Ngo,*
*548 U.S. 81 (2006)*. "Proper exhaustion demands compliance with an agency's
deadlines and other critical procedural rules because no adjudicative system
can function effectively without imposing some orderly structure on the course
of its proceedings." *Id.* at 2386. Such requirements "eliminate unwarranted
federal-court interference with the administration of prisons, and thus seeks
to 'affor[d] corrections officials time and opportunity to address complaints
internally before allowing the initiation of a federal case.'" *Id.* at 2387 (quoting
*Nussle*, 534 U.S. at 525). Failure to substantially comply with procedural
requirements of the applicable prison's grievance system will result in a
procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir.
2004).

Here, the record indicates that the plaintiff did not properly exhaust his
administrative remedies with respect to his Eighth Amendment claims
regarding lack of heat and hot water in his cell in the RHU. Specifically, a
review of the plaintiff's grievances indicates that he was seeking free medical
care based on his conditions of confinement, and *not* that the heat or hot water
in his cell in the RHU be fixed. As DC-ADM 804 requires inmates to request
the specific relief sought in their grievances, the court finds that plaintiff's

Eighth Amendment claims regarding the lack of heat and hot water in his cell are procedurally defaulted. *See* (Doc. No. 69-2 at 10). Consequently, the court recommends that summary judgment be granted in favor of the defendants on plaintiff's Eighth Amendment claims regarding the lack of heat and hot water in his cell while confined in the RHU.

### E.   Lack of Personal Involvement

Next, the plaintiff takes issue with defendants Lawler and Corbin because he received unfavorable responses to his grievances and misconduct appeals. However, it is well-established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; [and] liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Accordingly, "participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement." *See Mincy v. Klem*, No. 08-0066, 2011 U.S. Dist. LEXIS 23009, at *13-14, (M.D. Pa. Mar. 8, 2011) (holding that participation in the misconduct appeal process or disposition of a grievance is insufficient to establish personal involvement, and as a result, summary judgment in favor of the defendants' alleged constitutional violations was appropriate) (collecting cases). Consequently, the court recommends that summary judgment be

granted in favor of defendants Lawler and Corbin on any of plaintiff's claims brought against them due to their unfavorable responses to his grievances or misconduct appeals. *See id.*

### F.   Claims regarding the  Misconduct Report

#### 1.   Eighth Amendment

The plaintiff appears to claim that the false misconduct report he received, and the subsequent time he spent in the RHU, amounted to a violation of the Eighth Amendment. *See* (Doc. No. 26 at ¶57). However, the filing of a false misconduct report does not violate the Eighth Amendment as such an act does not constitute the denial of basic human needs, such as clothing, food, shelter, medical care, or sanitation. *Laurensau v. Folino*, No. 10-0065, 2011 U.S. Dist. LEXIS 69874, at *16 (W.D. Pa. June 29, 2011) (collecting cases). In addition, segregated confinement, by itself, does not implicate the Eighth Amendment's protection against cruel and unusual punishment. *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997). As such, the court recommends that summary judgment be entered in favor of the defendants on plaintiff's Eighth Amendment claim.

#### 2.   Due Process Claim

Next, the plaintiff appears to have brought a due process claim, based

28

solely based on the issuance of the alleged false misconduct report and the time he spent in the RHU. *See* (Doc. No. 26 at ¶57). An inmate's due process rights are not triggered unless the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Young v. Beard*, 227 Fed. Appx. 138, 141 (3d Cir. 2007) (quoting *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003)); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Atypical and significant" is generally ascertained "by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997). Courts in this circuit have repeatedly ruled that a prison guard's alleged issuance of a false misconduct report, and several months of disciplinary confinement, do not rise to the level of an "atypical and significant hardship" upon an inmate. *See*, *e.g.*, *Gay v. Shannon*, 211 Fed. Appx. 113, 116 (3d Cir. 2006) (issuance of an allegedly false misconduct report does not violate due process); *Rhoades v. Adams*, 194 Fed. Appx. 93, 94-95 (3d Cir. 2006) (same); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (allegation of false disciplinary report resulting in seven months' disciplinary confinement not sufficient to constitute a due process deprivation). Consequently, the court recommends that summary judgment be entered in

29

favor of the defendants on plaintiff's due process claim.

### 3.     Equal Protection Claim

Additionally, it appears that plaintiff may have intended to bring a Fourteenth Amendment equal protection claim based on the issuance of the alleged false misconduct report and/or his subsequent confinement in the RHU. (Doc. No. 26 at ¶57). As indicated above, the Equal Protection Clause of the Fourteenth Amendment requires that all persons "similarly situated" be treated alike by state actors. *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). As such, in order for plaintiff to state an equal protection violation, he must show that he was similarly situated to, and treated differently from, other inmates, and that this discrimination was purposeful or intentional rather than incidental. *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 424 (3d Cir. 2000).

Here, the plaintiff has failed to allege that he was subjected to any purposeful or intentional discrimination by any the defendants alleged to have been involved in the issuance of the alleged false misconduct report. Moreover, there are simply no allegations, or any evidence in the record to support a finding, that defendants Henry, Gil, Everly or Dick discriminated

against him. As such, the court recommends that summary judgment be granted in favor of the defendants on plaintiff's equal protection claim. *See*, *e.g.*, *Brown v. Beard*, No. 07-0637, 2011 U.S. Dist. LEXIS 29041, at *60-62 (W.D. Pa. Mar. 21, 2011).

### 4.    First Amendment Retaliation Claim

Finally, plaintiff claims that defendants Henry, Gil, Everly and Dick were involved in issuing him a fabricated misconduct, and that he received this fabricated misconduct because he assisted prisoners with their lawsuits, provided legal advice to defendant Dick, and his association with a fellow prison litigator. As such, the plaintiff brings a First Amendment retaliation claim against defendants Henry, Gil, Everly and Dick.

As indicated above, in *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001), the Third Circuit set forth the elements necessary in order for a prisoner to succeed on a claim of retaliation. First, the prisoner must establish that the conduct which led to the alleged retaliation was constitutionally protected. *Id.* at 333. Next, the prisoner must establish that he suffered some adverse action at the hands of prison officials. *Id.* This requirement is satisfied when the prisoner demonstrates that the action taken against him was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Id.*

Finally, under *Rauser*, the prisoner must establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Id.* Here, the Third Circuit has used a burden shifting framework where the prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial motivating factor in the decision to discipline him or retaliate against him. *Id.* Once the prisoner meets his burden, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. *Id.* Under this framework, the courts must also take into account the difficult task of prison administration. *Id.*

Moreover, as relevant here, the filing of a prison disciplinary report is not actionable under 42 U.S.C. §1983 as prohibited "retaliation" unless the report is, in fact, false. *See Walker v. Campbell*, No. 09-0282, 2011 U.S. Dist. LEXIS 142673, at *19 (W.D. Pa. Oct. 31, 2011). In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not engaged in constitutionally protected activity. *Id.* at *19-20 (collecting cases). *See also Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005) ("in light of the fact that he was found guilty of misconduct, Romansky does not

state a retaliation claim based upon his receipt of a misconduct after he told a prison employee that a copy of his grievance was lost").

Here, the evidence submitted by the defendants shows that on February 23, 2010, the plaintiff was issued misconduct #B168014. (Doc. No. 69-1 at 38). The misconduct report indicates that plaintiff had called defendant Dick over to his cell and then exposed himself to her. *Id.* The misconduct report further indicates that the plaintiff had done the same thing ten days earlier and had been ordered to not do that again. *Id.* As a result he was charged with sexual harassment, indecent exposure, refusing to obey an order and violating the Pennsylvania criminal code. *Id.* On February 26, 2010, the plaintiff had a misconduct hearing and was found guilty on all charges. (Doc. No. 69-1 at 42). Specifically, the Hearing Examiner found that "the staff report and video are believed over the denial of inmate Miller [and] that Miller did more likely than not call the COT [Corrections Officer Trainee] to his cell and exposed himself to her . . . []." *Id.* As such, the plaintiff was removed from his prison job and was ordered to spend sixty (60) days in disciplinary custody. *Id.*

The plaintiff then filed a misconduct appeal on the basis that the procedures employed were contrary to law, Department Directives or regulations; the punishment was disproportionate to the offense; and the

33

findings of fact were insufficient to support the decision. *Id.* at 45. On March 15, 2010, after reviewing the record, the Program Review Committee upheld the decision of the Hearing Examiner. *Id.* The plaintiff then appealed to the Superintendent, raising the same arguments he did to the Program Review Committee. *Id.* at 47. On March 26, 2010, Superintendent Lawler rejected plaintiff's appeal as lacking merit, and sustained the decision of the hearing examiner. *Id.* The plaintiff then appealed to final review, and on, April 12, 2010, the Chief Hearing Examiner ruled that the responses provided by the Program Review Committee and the Superintendent should be upheld in full, and that his appeal must be denied. *Id*. at 49.

In sum, it is clear that plaintiff has been found guilty of the underlying misconduct charge, and that his prison disciplinary conviction was based on "some evidence," namely the video and staff report, which is sufficient to support a prison disciplinary conviction. As such, the court recommends that the defendants' motion for summary judgment on plaintiff's First Amendment retaliation claim be granted. *See Romansky*, 147 Fed. Appx. at 312; *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the

discipline was retaliatory in nature must fail) (citation and quotation marks omitted).

### G.   Procedural Due Process Claim - Misconduct Hearing

The plaintiff claims that his procedural due process rights were violated at his misconduct hearing because he was not permitted to present exculpatory evidence, and because the hearing examiner was not capable of being fair and impartial. However, ". . . procedural errors in a disciplinary proceeding do not in and of themselves trigger protection under the Due Process Clause -- even if the inmate receives a disciplinary sanction as a result of the proceedings." *Walthour v. Tennis*, No. 07-0528, 2008 U.S. Dist. LEXIS 72710, at *15 (M.D. Pa. Sept. 24, 2008).

"In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists, and if so, the next step is to define what process is mandated to protect it." *See id.* (citing *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). The Third Circuit has held that "an inmate's procedural due process rights are not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Young v. Beard*, 227 Fed. Appx. 138, 141 (3d Cir. 2007) (quoting *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003));

35

*see also Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Atypical and significant" is generally ascertained "by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997). Moreover, confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *See Walthour*, 2008 U.S. Dist. LEXIS 72710, at *16 (citing *Sandin*, 515 U.S. at 486); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (allegation of false disciplinary report resulting in seven months' disciplinary confinement not sufficient to constitute a due process deprivation).

In deciding whether a protected liberty interest exists under *Sandin*, a federal court also considers the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *See Walthour*, 2008 U.S. Dist. LEXIS 72710, at *16. Here, the record indicates that plaintiff was sanctioned to sixty (60) days disciplinary custody and loss of his prison job.

As an initial matter, plaintiff's sanction of sixty (60) days disciplinary custody, without more, does not amount to an atypical or significant hardship

36

which would implicate a liberty interest. *See id.* at \*17. However, the court notes that plaintiff has alleged that he was subjected to cold temperatures and a lack of continuous hot water in his cell during his confinement in the RHU, as well as inadequate access to medical care. Although plaintiff has alleged that there were issues with the temperature in his cell, there is simply no evidence in the record to support this assertion. Moreover, the plaintiff's own evidence indicates that the temperatures in the RHU ranged from 68.7 degrees to 78.2 degrees on April 20, 2011. (Doc. No. 78 at 61). Clearly, this evidence does not support a finding that plaintiff was subjected to low temperatures. However, with respect to the asserted hot water issues, the plaintiff has submitted work slips which indicate there were issues with the hot water pipe in his alleged cell. (Doc. No. 78 at 62, 65). Even if the court was to assume that the plaintiff lacked hot water in his cell, such a claim, by itself, is insufficient to establish an atypical and significant hardship. *See*, *e.g.*, *Allen v. Passaic County Jail*, No. 09-0408, 2009  U.S. Dist. LEXIS 113560, at \*27-28 (E.D. Pa. Dec. 4, 2009). In addition, to the extent, the plaintiff complains about the lack of medical care in the RHU, as explained above, it was the plaintiff who refused to pay for medical care as he believed he was entitled to free medical care. Finally, the court notes that the plaintiff had no constitutionally

37

protected liberty or property interest in his prison job. *Fidtler v. Pa. Dep't of Corr.*, 55 Fed. Appx. 33,35 (3d Cir. 2002) (citing *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975)).

In sum, the record does not indicate that plaintiff's sanctions amounted to an atypical or significant hardship in relation to the ordinary incidents of prison life. As such, the plaintiff has failed to demonstrate that he was entitled to due process protections with regard to his disciplinary confinement or the loss of his prison job. Consequently, the court recommends that summary judgment be entered in favor of defendant Mitchell on plaintiff's procedural due process claim.

### H.   Retaliation Claim - Mitchell

In addition, the plaintiff brings a retaliation claim against defendant Mitchell. Specifically, plaintiff appears to claim that defendant Mitchell retaliated against him at his misconduct hearing because of his role in assisting another inmate with his lawsuit. *See*  (Doc. No. 78 at 19-20).

As explained above, to state a claim for retaliation, a plaintiff-prisoner must first show that he or she engaged in constitutionally protected conduct. *See Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225). Here, the plaintiff asserts that his constitutionally protected conduct was assisting other

inmates with their lawsuits. However, inmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates. *Shaw v. Murphy*, 532 U.S. 223 (2001). As such, plaintiff cannot establish that he engaged in constitutionally protected conduct. *See Walker v. Campbell*, No. 09-0282, 2011 U.S. Dist. LEXIS 142673, at *13-14 (W.D. Pa. Oct. 31, 2011). Consequently, defendant Mitchell is entitled to summary judgment on plaintiff's First Amendment retaliation claim.

## I.   Retaliation Claims - Lawler and Corbin

The plaintiff also brings retaliation claims against defendants Lawler and Corbin for denying his grievances and misconduct appeals. Specifically, in plaintiff's brief in opposition, he clarifies that he believes defendants Lawler and Corbin retaliated against him due to his litigation activities, namely for his role in assisting another inmate with his lawsuit, and an additional separate lawsuit that the plaintiff had previously filed in the Eastern District of Pennsylvania, 07-cv-2786.  (Doc. No. 78 at 19).

As explained above, to state a claim for retaliation, a plaintiff-prisoner must first show that he or she engaged in constitutionally protected conduct. *See Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225). Here, the plaintiff asserts that his constitutionally protected conduct was assisting a

fellow inmate with his lawsuit. However, inmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates. *Shaw v. Murphy*, 532 U.S. 223 (2001). Because plaintiff cannot establish that he engaged in constitutionally protected conduct by assisting another inmate with his lawsuit, the plaintiff cannot maintain a First Amendment retaliation claim against defendants Corbin and Lawler on that basis. *See Walker v. Campbell*, No. 09-0282, 2011 U.S. Dist. LEXIS 142673, at *13-14 (W.D. Pa. Oct. 31, 2011).

In addition, the court finds that plaintiff's alternative argument, namely that his grievances and/or misconduct appeals were denied because of his previously filed lawsuit, also lacks merit. A review of the docket in plaintiff's case in the Eastern District of Pennsylvania, 07-cv-2686, reveals that defendants Lawler and Corbin are not defendants in that action. Moreover, there is simply no evidence in the record to support a finding that the defendants' actions in denying his grievances and misconduct appeals were substantially motivated by plaintiff's previously filed lawsuit in the Eastern District of Pennsylvania. *See Thrower v. N.J. State Parole Bd.*, 438 Fed. Appx. 71, 74 (3d Cir. 2011).

Alternatively, to the extent the plaintiff is bringing a retaliation claim

40

against defendant Lawler for not ordering the medical department to provide him free medical care, his claim lacks merit because, as explained above, the plaintiff was not entitled to free medical care. As such, defendant Lawler should be entitled to summary judgment on this First Amendment retaliation claim. *See Rauser*, 241 F.3d at 334 ("the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest").

Finally, the court notes that plaintiff cannot prevail on his retaliation claims regarding the denial of his misconduct appeals because, as explained above, the plaintiff was found guilty of the underlying misconduct charge, and his prison disciplinary conviction was based on "some evidence" sufficient to support a prison disciplinary conviction. *See Romansky*, 147 Fed. Appx. at 312; *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail) (citation and quotation marks omitted).

Therefore, the court recommends that defendant Lawler and Corbin's motion for summary judgment on plaintiff's First Amendment retaliation claims

be granted.

## J.   Supervisory Liability Claims

Next, it appears that the plaintiff may have intended to bring supervisory liability claims against some of the Corrections Defendants. However, as explained above, the plaintiff has failed to establish that his First, Eighth or Fourteenth Amendment rights have been violated. Because plaintiff has failed to establish any constitutional violation, the court recommends that any supervisory liability claim brought against any of the Corrections Defendants be dismissed. *See Schlichter*, 2006 U.S. Dist. LEXIS 57399, at *35 ("Because it has been determined that Plaintiff's claims of First Amendment retaliation against Defendants Weaver and Moore have failed to establish a constitutional violation, there can be no supervisory or municipal liability assessed against Defendants Zaremba and Limerick Township").

## K.   Conspiracy Claims

The court notes that the plaintiff alleges, at various times throughout the amended complaint, that the defendants had "conspired" against him to violate his constitutional rights. To demonstrate a conspiracy under §1983, a plaintiff must show "an actual abridgement of some federally-secured right." *See Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1 (1st Cir. 2003) (citing *Nieves v.*

*McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) ("The fact that a plaintiff styles her claim as a conspiracy . . . does not diminish her need to show a constitutional deprivation."); *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)). Because the plaintiff has not established that any of his constitutional rights were violated, the court recommends that summary judgment be granted on plaintiff's conspiracy claims.

### L.   State Law Claims

Finally, also included in the complaint are various state law claims against the defendants in their individual capacities. The court recommends that supplemental jurisdiction not be exercised over the pendent state law claims, which appear to be sexual harassment, ethics violations, defamation and slander claims. 28 U.S.C. §1367(c)(3). Furthermore, the court recommends that they be dismissed without prejudice to any right plaintiff may have to pursue them in state court.

### IV.   RECOMMENDATION[4]

For the reasons set forth above, **IT IS RECOMMENDED THAT:**

---

[4] For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.

(1)   defendant Riscigno's motion to dismiss, (Doc. No. 42), be

**GRANTED;** and

(2)   the Corrections Defendants' motion for summary judgment, (Doc.

No. 47), be **GRANTED.**


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date**: February 3, 2012
O:\shared\REPORTS\2010 Reports\10-0946-01.wpd